Baldwin, J.
Whether parcel or not of the demised premises, if not ascertained by the written contract, is always open to extrinsic evidence. In this case the memorandum of agreement between Sowers and Morris, designed to be preliminary to a more formal lease, does not describe the demised tenement, and other evidence is indispensable to determine even its locality, a matter, however, which was distinctly understood between the parties, and in regard to which there seems never to have been the slightest controversy. But a dispute has arisen, whether the cellar room in which the alleged trespass is charged to have been committed, was appur *101 tenant to the leased tenement. That room is under an adjoining tenement, which, as well as the leased tenement, at one time belonged to Pitman, who rented the latter to Morris for a year, and with it the said cellar room of the adjoining tenement. Before the expiration of the year, Pitman sold both tenements to Sowers, who also before the expiration of the year, made the agreement with Morris above mentioned, by which the latter became the tenant' of Sowers for the succeeding year; and the written memorandum being silent as to the said cellar room of the adjoining tenement, the previous lease from Pitman to Morris was introduced by the plaintiff on the trial, with accompanying parol evidence, that the tenement rented by Morris from Sowers was the same tenement which he had previously rented from Pitman, and that the said cellar room of the adjoining tenement was indispensable to Morris for the purposes of the business in which he was engaged.
I think the evidence so introduced, both written and parol, was perfectly proper for the consideration of the jury, upon the question of fact, whether the parties to the lease from Sowers to Morris intended to embrace therein the said cellar room of the adjoining tenement, as parcel of or appurtenant to the demised premises; and therefore that there was no error in the decision of the Circuit Court on that point.
In a joint action of trespass against several, if the jury find the defendants guilty jointly, and especially if they have pleaded jointly, it is the duty of the jury to assess the damages jointly against all; for otherwise they depart from their own finding, which is that the defendants are equally guilty, and from the rule of law which makes joint trespassers liable for the amount which the most culpable ought to pay. In Hill &c. v. Goodchild, 5 Burr. 2790, Lord Mansfield, delivering the opinion of the Court, said : “ We hold that as the trespass is jointly charged upon both defendants, and the *102 verdict has found them both jointly guilty, the jury could not afterwards assess several damages.” — “ We do not think that the present case calls for an opinion upon those cases where the defendants are charged jointly and severally, or where the defendants plead severally, or where a joint action is brought for two several trespasses, and the damages found severally, as being severally guilty. We do not meddle with any of these cases; there is a variety of opinions in the books relating to them. It is enough to found our present determination upon the present case. And the present case is, that the count is of a joint trespass; and the jury have found the defendants guilty of a joint trespass, and yet have severed the damages. We are of opinion, that in such case the damages cannot be severed.” And the judgment, which was in conformity with the verdict, was reversed. And in 1 Wms. Saund. 207 a, note, it is laid down broadly that, “ where several persons are jointly charged in an action of assault, battery and false imprisonment, or any other trespass, who either plead jointly, or sever in their pleas, or one suffers judgment to go by default, (for it is immaterial which is the case,) if the jury assess several damages, the verdict is wrong, and the judgment will be erroneous.” In conformity with this proposition is the opinion of the Court in Bohun v. Taylor, 6 Cow. R. 315; and so are the opinions of the Judges in Ammonett v. Harris & Turpin, 1 Hen. & Munf. 488.
But where the jury by mistake have assessed several damages, the plaintiff may cure the defect by entering a nolle prosequi as to some, and taking judgment against the other; for such actions being in their nature joint and several, as the plaintiff might therefore have originally commenced his action against one only, and proceeded to judgment and execution against him ; so he may after verdict against several, elect to take his damages against either of them. 1 Wms. Saund. 207 n.; 2 Bac. Ab. Dam. D 4; 1 Tidd’s Prac. 735.
*103 It seems to me, however, that it can never be correct for the Court to instruct the jury, as was done in the present case, that they may sever in the damages, and . , .... . . . assess respectively what m their opinion each party found guilty ought to pay; for if such a practice be allowed to prevail, it must abrogate the rule, so well established, that the damages cannot be severed. In Brown v. Allen & Oliver, 4 Esp. N. P. C. 158, Lord Ellenborough instructed the jury that they could not sever the damages, and give more against one defendant than against the other; but that they should therefore take it as their rule in estimating the verdict against both, to find the amount which they thought the most culpable of the defendants ought to pay. It must, I think, be erroneous to instruct the jury to find a wrong verdict, upon which the plaintiff cannot take judgment in conformity therewith. Mitchell v. Milbank, &c. 6 T. R. 199.
And yet I think the judgment in this case cannot be reversed for that error. It cannot be treated as error to the prejudice of the appellant, who is not subjected beyond his legal responsibility; but must be regarded as rather to the prejudice of the plaintiff, who was entitled to a joint verdict against all the defendants for the whole amount of damage he had sustained, instead of an apportionment amongst them of the aggregate amount, part of which, too, he was obliged to relinquish in order to obtain any judgment for the rest.
When a trial of a cause is had before a jury, and they cannot agree upon a verdict, or do agree upon a verdict which is set aside by the Court, and a new trial awarded, the proceedings upon the former trial are functus officio, and improper for the consideration of the jury upon the new trial. Any opinion expressed by the former jury, or by the Court upon the former trial, is wholly irrelevant matter, and can only tend to mislead and confuse the jury. Can the former verdict of the jury, or any *104 decision of the Court at the former trial, excluding evidence then offered as illegal, or admitting it as legal and proper, or instructing the jury as to the law of the case, be given in evidence to the jury upon the second trial ? jr¡very one wiH at 0nce admit that if such evidence of what occurred at the former trial were formally offered at the second trial, and objected to, it would be the duty of the Court to exclude it. Suppose in this case that the counsel for the plaintiff had offered to read to the jury the former verdict, or a bill of exceptions taken on the former trial, would it not have been competent for the defendant to object to it, and would it not have been the duty of the Court to reject it ? Yet this it seems is what was done substantially. The plaintiff’s counsel, as I understand the record, referred to the bills of exception taken at the former trial, as incontrovertible evidence of what could not with truth be denied, that the Court on the former trial had decided points conclusive as to the merits’of the cause; and as further evidence that a former verdict had been rendered for the plaintiff, which the Court had approved, both as to the plaintiff’s right to recover, and the amount of damages, but which was set aside on the ground of some irregularity.
To this irrelevant and improper matter, the defendant’s counsel objected, but the Court refused to exclude it from the consideration of the jury: And why ? Surely not because it was proper for the consideration of the jury: but because it was the duty of the defendant to move for instructions in opposition to this irrelevant and improper matter. What kind of instructions was the defendant expected to move for? Was it an instruction that the matter was irrelevant and improper, and that the jury should give no weight to it ? This in effect was what he did by his objection ; but that objection was overruled by the Court. It seems, therefore, that the defendant was expected to move for instructions upon the points of law which the Judge had already *105 decided against him upon the former trial, as appeared from the former bills of exception, referred to with the acquiescence of the Court.
Instructions are moved for by a party with the view of affecting the verdict of the jury; but to move for them in the teeth of the known opinion of the Judge was to surrender the verdict; and there could be no motive for them but to prepare the cause for an appellate forum. Was this the duty of the defendant, or was it the duty of the plaintiff, who relied upon the opinion of the Judge in order to obtain a verdict, and at the same time sought, it would seem, to avoid responsibility in the Appellate Court? It seems to me that if the plaintiff relied upon the law of the case, as expounded by the Judge, he ought to have called for its exposition by the Judge to the jury, instead of relying upon its exposition by him to the former jury.
The opinion of a Judge sitting in a cause is not authority to be considered and weighed by a jury, but a judicial decision which the jury are bound to obey, and which the parties cannot controvert except in an appellate forum. It surely could not have been contemplated that the opinions of the Judge brought before the jury, and admitted to.have been given formerly in the very cause, and believed to be still adhered to, were to be the subject of discussion before the jury, and the correctness of them to be denied in argument. And of what avail could have been the argument of counsel against the known opinion of the Judge, if a re-argument had been allowable, after the concluding speech of the plaintiff’s counsel ?
/ The manifest object of the plaintiff’s counsel was to obtain a verdict, by force of the Judge’s opinions in their favour, which they succeeded by permission of the Court in getting before and urging to the jury. Ought not their client to be responsible for the correctness of those opinions ? If they were right, then the defendant *106 has not been prejudiced: but if they were wrong, it is no answer to the error of practice and opinion to say that the defendant ought to have countervailed it, by moving for instructions on his part. The proper course of the Court, it seems to me, was to prevent the mischief; and there is no reason to believe that it would have been cured by the defendant’s moving for instructions; for the presumption is that if the Judge had changed his opinion of the law he would have said so, without waiting for a formal motion. And what practicable cure was there for the error of the Judge in permitting his opinion of the former verdict to be relied on ? No instruction could have been asked for on that point, except the one substantially asked for, that his opinion in regard to it was irrelevant and improper matter upon the new trial.
If such a practice should receive the sanction of this Court, I apprehend it will be resorted to upon every new trial. The former verdict will always be relied on; and so also will the opinions of the Judge upon the former trial. This can only tend to confusion and mischief. The plain and obvious preventive, it strikes me, is to hold that the former proceedings cannot be relied on at all; and so the rejection of them will confine the counsel to the legitimate evidence before the jury, and such instructions upon the law as either party may move for and obtain. The practice would be particularly objectionable in the County Court, where ttie Court is pften constituted of an even number of justices; and where countervailing instructions would of necessity fall upon an equal division of the Court.
This view of the case brings us to the question, whe\ ther the Circuit Court erred in its opinion declared at the first trial, and which it permitted to go to the jury on the last, in regard to the construction and legal effect of the lease from Soioers to Morris. Did that lease expire with the year for which it was made; or did it *107 create a tenancy from year to year, and so require a notice from the landlord to the tenant to quit at the end of the year?
„ . ... , The tenancy from year to year is a qualified tenancy at will, introduced to obviate the inconveniences of that kind of estate; and the qualification requires the determination of the will to be prospective, to take effect at the end of a current year of the tenancy, and under a reasonable notice to quit, which, as regulated by our act of 1841, must be a notice of three months when the demised premises are situate in ail incorporated town, and of six months when situate in the country. Such a tenancy, unless provided for by the terms of the contract, being a mere modification of the ancient tenancy at will, can arise only where the duration of the tenancy is originally indefinite, or where being definite, the tenant with the consent of the landlord, holds over after the expiration of the term. If the length of the term be fixed by the contract, as where the lease is for a year, or a certain number of years, no notice to quit is necessary to dissolve the relation of landlord and tenant. Com. Lan. and Ten. 286, 6 Law Lib.; Cobb v. Stokes, 8 East 358. So if the tenant holds over by the laches of the landlord, after the term has run out, he will be merely tenant by sufferance; and the landlord may enter and put an end to the tenancy when he pleases. 4 Kent Comm. 117. In Messenger v. Armstrong, 1 T. R. 44, Lord Mansfield, delivering the opinion of the Court, said : “ Where a term is to end on a precise day, there is no occasion for notice to quit, because both parties are apprised that unless they come to a fresh agreement there is an end of the term.”
In the case before us, the lease was for a definite period, and there was no holding over with the consent of the landlord. The contract was for one year from a specified day, at the yearly rent (meaning the rent for the year) of 85 dollars, payable quarterly in advance. *108 The “preference” which it gave to Morris “each succeeding year thereafter,” was no extension of the term, nor did it authorize him to continue it at pleasure. It was nothing more than the privilege of what is called jn comEnon parlance, “ the refusal;” and gave to Morris not the absolute but the preferable right to become the tenant for succeeding years; so that if Sowers should continue to rent out the property, Morris was to have it, upon such terms as the parties should agree upon, or any other person should offer. It did not restrain Sowers from taking possession of the property at the end of the year, and occupying it himself, or transferring it to a purchaser, or shutting it up and keeping it vacant.
If this view of the stipulated preference were not correct, still it could not have the effect of changing the demise for a year certain into a tenancy from year to year; for such a tenancy is still a modified tenancy at will, and may be determined by either party, upon due notice to the other. But here the privilege reserved of prolonging the tenancy at the end of the year certain, was reserved to the tenant, and not to the landlord : and if absolute, the landlord could not get rid of it by any notice to quit. It would, in truth, in that aspect, be in the nature of a covenant of renewal, dependent for its exercise, or the reverse, upon the will of the tenant, and in no wise upon that of the landlord. Now, a covenant of renewal supposes the expiration of a lease for a definite period, and provides for a new one of the like kind : and in the nature of things cannot occasion a tenancy from year to year, determinable by a notice to quit. And it is not conceivable that the “ preference” reserved in this case can be regarded as a covenant for renewal, from year to year, absolutely and indefinitely.
It seems to me, therefore, that the Circuit Court erred in its construction of the lease in question, which did not create a tenancy from year to year, but expired at *109 the end of the year therein specified, though no notice to quit had been given to the tenant.
The other Judges concurred in the opinion of Baldwin, J.
The judgment was as follows:
It seems to the Court,
1. That upon the question whether the cellar room in which the alleged trespass is charged to have been committed, was appurtenant to the tenement leased by Soioers to Morris, the defendant in error, the Circuit Court did not err in admitting as evidence, for the consideration of the jury, the previous lease from Pitman, the vendor of Sowers, to Morris, after proof by parol evidence that the tenement demised by the one lease was the same with that demised by the other: nor in permitting it to be proved by parol evidence that said cellar room was indispensable to Morris, for the purposes of the business in which he was engaged.
2. That the Circuit Court did not err to the prejudice of Craioford, the plaintiff in error, in its instruction to the jury that they might sever in their damages, and assess respectively what in their opinion each defendant found guilty ought to pay: nor in suffering Morris after such severance to enter a nolle prosequi as to Crawford's co-defendants, and take judgment against him alone.
3. That the Circuit Court did err in permitting the verdict rendered at the former trial, and the opinion of the Court then expressed on the motion for a new trial, and the instruction given by the Court to the former jury, as to the construction and legal effect of the lease from Sowers to Morris, to be referred to and relied upon before the jury at the last trial, on the part of Morris, as matter proper for the consideration of the jury; this Court being of opinion that the said verdict, opinion *110 and instruction, at the former trial, were improper and irrelevant matter for the consideration of the jury at the last trial; and that said instruction was erroneous in holding, that the lease from Sowers to Morris constituted a tenancy from year to year, and entitled the tenant to a notice to quit.
It is therefore considered by the Court, that the judgment of the Circuit Court is erroneous, and that the same be reversed and annulled, with costs to the plaintiff in error against the defendant in error; and that the verdict of the jury be set aside, and the cause remanded to the Circuit Court for a new trial to be there had of the issue joined, as between the present parties.